374

## MARINO et al. v. O'BYRNS.—255 S. W. (2d) 720.

Western Division at Jackson.   November 24, 1952.

Petition for Certiorari denied March 6, 1953.

R. R. Bond, of Memphis, for plaintiffs in error.

Costen, Crabtree, Costen & Burns, of Memphis, for defendant in error.

SWEPSTON, J.  Action by plaintiffs, Marino, to recover under the Housing and Rent Act of 1947 Public Law 129—80th Congress, as amended in 1948 and 1949, 50 U. S. C. A. Appendix Section 1881 et seq., for alleged overcharge of rent and treble damages with reasonable attorney's fee.

The case was tried by the Court without a jury, judgment was rendered for defendants and plaintiffs have appealed and assigned error; (1) there is no evidence to support the verdict, (2) the same is contrary to law and (3) that defendants agreed in open court that the rent on the premises unfurnished was fixed under the 1942 act at $40 per month, and that defendants had

collected $75 per month during the entire rental period, from September 13, 1948 to March 15, 1952.

The theory of plaintiffs is that they rented the premises unfurnished; that, although defendant's premises were decontrolled by the 1947 Act, Section 202 (c) (3) (B) as amended in 1948 and 1949, so long as the premises were occupied by the owner and not rented out, when she rented it for an increased amount, she was required to petition the Rental Office for an approval of the increased amount, or an adjustment of same up or down, and that upon her failure to do so, she could only charge the amount of $40 which had been fixed under the 1942 Act as the maximum rent for the unfurnished premises.

The theory of defendant is that the premises were rented to plaintiffs furnished and as new and different "housing accommodations" by reason of the substantial renovation of the entire property; that the property was exempted from control by the 1947 Act as amended and defendant in view of the improvements to the property had the right to rent it for whatever price she could trade with a prospective tenant, subject only to the Rent Control Regulations hereinafter quoted, which required defendant to file the petition for approval of the increased amount and obtain approval of adjustment of same.

Counsel are in agreement that these premises were decontrolled by the 1947 Act as amended in 1948 but differ as to the construction of the 1949 Act recontrolling the decontrolled property and of the Rent regulations promulgated pursuant to said Act.

At this point we think it would be helpful to state our findings of fact.

We find the facts to be that defendant, Mrs. O'Byrns purchased the residence involved in July 1944 and with

her husband and her daughter began occupying same as their home and so occupied it until she rented it to plaintiffs on September 13, 1948.

Prior to her purchase the property had been registered with the rent control office as unfurnished and a maximum rental of $40 unfurnished, had been established. Subsequent to her purchase she furnished the interior for the use of herself and family and spent about $1100 additional in laying a concrete driveway, fencing the yard, installing a cabinet type sink, tiling the bathroom, putting linoleum on the bathroom floor, installing thermostat on heaters and in adding a completely new and additional room in the attic.

All of these facilities were present, except a cooking stove and refrigerator, at the time in 1948 plaintiffs rented the place and during their entire occupancy. Defendant rented the property to plaintiffs because she and her husband moved from Memphis to Jackson, Mississippi. Her daughter Mrs. Gaia is named a defendant because she remained in Memphis and collected the rent from plaintiffs.

When this suit was filed on February 12, 1952, defendant consulted her attorney who advised her to petition the Rent Control Office for approval or adjustment of the rent of the new housing accommodations and informed her she should have done so prior thereto. She filed the petition setting out the improvements and on February 29, 1952, the rent was fixed at $82.50, that is, increased from $75, effective from that date.

The pertinent sections of the statute and regulations are:

"Maximum Rent for Controlled Housing Accommodations First Rented After June 30, 1947 During Period from April 1, 1949, to December 18, 1951:

"Sec. 4. Maximum Rents—

" ' (c) First rent after June 30, 1947 * * *. For controlled housing accommodations first rented on or after July 1, 1947, the *maximum rent shall be the first rent for such accommodations.* Within thirty days after so renting, the landlord shall register the accommodations as provided in section 825.7 except that in the case of controlled housing accommodations (other than accommodations in hotels to which paragraph (f) of this section applies) which were not included as controlled housing accommodations on March 31, 1949, such registration shall be made by the end of such thirty day period, or by May 15, 1949, whichever date is later. The Expediter may order a decrease in the maximum rent as provided in sections 825.5 (c) (1) and (6). If the landlord fails to file a proper registration statement within the time specified, the rent received for any rental period commencing on or after the first renting shall be received, subject to refund to the tenant of any amount in excess of the maximum rent which may be fixed by an order under sections 825.5 (c) (1) or (6) * * *.'

"Section 4 (c), Part 825 Rent Regulations under the Housing and Rent Act of 1947, as Amended. Dated Sept. 1, 1949.

"Maximum Rent for Controlled Housing Accommodations First Rented—After June 30, 1947 During Period from December 19, 1951 to Present:

" 'Sec. 83. *First rent after June 30, 1947 (see also section 85).*

" ' (a) For housing accommodations first rented on or after July 1, 1947, the maximum rent *shall be*

*the first for such accommodations.* The landlord shall, within 30 days after renting said accommodations, file a proper registration statement in the area rent office in accordance with the provisions of sections 211 to 214, except that in the case of controlled housing accommodations which were not included as controlled housing accommodations on March 31, 1949, such registration shall be made by the end of such 30 day period, or by May 15, 1949, whichever date is later. The Director may order a decrease in the maximum rent as provided in section 157 and 162' ''.

''(h) Section 204 of such Act, as amended, is amended by adding at the end thereof the following new subsections:

'' '(h) For controlled housing accommodations which were not included within the definition of ''controlled housing accommodations'' as such definition read prior to the effective date of the Housing and Rent Act of 1949, the maximum rent shall be the maximum rent last in effect for *such housing accommodations* under Federal rent control, plus or minus applicable adjustments; or, if no maximum rent was ever in effect for such housing accommodations, the maximum rent shall be the rent generally prevailing in the defense-rental area for comparable controlled housing accommodations *within such area*, plus or minus applicable adjustments'.'' 50 U. S. C. A. Appendix Sec. 1894 (h).

■ ■ Plaintiffs insist that the house was rented unfurnished. The trial judge found against them and such finding is fully supported by the evidence. The fact is that not only was it rented furnished but it was by reason of the substantial improvements in and about

the premises an entirely different "housing accommodations", as the same is defined in Section 202 (b), 50. U. S. C. A. Appendix, section 1892 (b) and as held in all of the cases as typified by Delsnider v. Gould, 81 U. S. App. D. C. 54, 154 F. (2d) 844, 848 and cases cited in Tomazich v. Padis, 72 Idaho 77, 237 P. (2d) 1071; Woods v. Ginocchio, 9 Cir., 180 F. (2d) 484, 488 (3).

This fact, however, is not determinative of this case.

The question to be settled is where property has been previously rented and a ceiling fixed on same as unfurnished by the director, the property then decontrolled during 1947 and 1948 by owner occupancy, then recontrolled under the 1949 Act, what is the status of the owner who improved the property substantially while living in it and then in 1948 rented to others for an increase over the original ceiling and failed to petition for the increase after the property was recontrolled?

Defendant insists that while the property was decontrolled, she had the right to rent for whatever she could obtain, citing Woods v. Polino, D. C., 86 F. Supp. 650; Prince v. Davis, 195 Misc. 901, 87 N. Y. S. (2d) 600.

With this much we agree and we think there is no liability for any overcharge during the period the property was decontrolled, that is from September 13, 1948 to April 1, 1949, the effective date of recontrol. But it will be observed that these two cases arose before the 1949 Act and in neither had the property been previously rented or a ceiling fixed on same.

Defendant relies upon Maddox v. Arch Realty Corp., Sup., 100 N. Y. S. (2d) 276, for the proposition that the previous ceiling for unfurnished premises is not the ceiling for furnished premises.

Also, that the first rent charged and received for new or different housing accommodations is the maximum until a different ceiling is established by the Rent Control office, citing the Maddox case, supra, and De Antueno v. Agostini, D. C., 94 F. Supp. 957.

Also that the failure of the landlord to register the accommodations in the time required by the above quoted Regulations does not of itself establish an overcharge or render him liable therefor, citing Lyon v. Thompson, 199 Misc. 527, 99 N. Y. S. (2d) 922; Tomazich v. Padis, 72 Idaho 77, 237 P. (2d) 1071.

In all of these latter cases except the Maddox case there was a prior renting and a ceiling established before the improvement of the property and they support defendant's insistence that the first rent charged after the improvement is the lawful rent until changed by the director.

But we think these cases are in conflict with one of higher authority on construction of Federal statutes: Forde v. U. S., 1 Cir., 1951, 189 F. (2d) 727, which does not deal with the 1949 Act recontrolling certain housing but relates to the decontrol provisions of the 1947 Act, Section 202(c) (3) (A). It holds that a landlord cannot *decontrol* an apartment, which has at all times been controlled with a ceiling fixed on same, by merely changing it from unfurnished to furnished; that he must first petition the rent director for an increase so as to give the rent director an opportunity to determine whether the raise is warranted by his inspection of the premises.

This decision is directly contrary to the cases relied on by the plaintiffs in their insistence that a substantial improvement automatically without a petition to the director makes it a new and different housing accommoda-

tion and relieves it from the ceiling previously fixed on the unimproved property.

█ When Congress manifested its purpose by the 1949 Act to recontrol housing theretofore decontrolled we think from a study of the Act, particularly subsection (h) .above quoted and subsection (i)(5), 50 U. S. C. A. Appendix Section 1894, the purpose was to relegate properties and owners to their former status as before decontrol occurred. See generally U. S. v. Porhownik, 2 Cir., 182 F. (2d) 829.

If so, there was a ceiling here of $40 which defendant could not increase without an order of the director; she could not do it simply by adding substantially to the facilities on which a ceiling already existed. Thierry v. Gilbert, 1 Cir., 147 F. (2d) 603; Ford v. U. S., supra; Dauksewicz v. U. S., 1 Cir., 194 F. (2d) 52.

In short, it is only where property is first rented after June 30, 1947, and has not been rented at any time prior that the maximum rent is the first rent, under the Regulations quoted.

█ We are therefore of opinion that, although defendant was free to rent her property at any price during decontrol, she lost this status by the 1949 Act and that she was bound after April 1, 1949 to secure an order for an increase over the former ceiling and that having failed to do so, she is liable for the overcharge from April 1, 1949 to February 29, 1952. We think the phrase ''such housing accommodations under Federal rent control, *plus or minus applicable adjustments*'' means the former ceiling established plus or minus any change obtained by petition to the director.

We are satisfied, however, that defendant was acting in entire good faith at all times in the belief her property

was not subject to control. Hence, there will be no penalty of treble damages and attorney fees.

Enter a judgment reversing the judgment below and giving judgment here for the amount of the overcharge for 12 months with interest from date and costs against defendant.

Anderson, P. J., and Baptist, J., concur.